**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ACOSTA INC.,<br><br>                              Plaintiff,<br><br>     v.<br><br>AON RISK SERVICES NORTHEAST,<br>INC.,<br><br>                              Defendant. | Civil Acton No. _23-cv-9435_<br><br><br>**COMPLAINT** |

Plaintiff Acosta Inc. ("Acosta"), by and through its attorneys, Smith, Gambrell & Russell, LLP, sues Defendant Aon Risk Services Northeast, Inc. ("Aon") and alleges in support thereof:

## PARTIES, JURISDICTION, AND VENUE

1.     Acosta is a Delaware corporation with its principal place of business located in Jacksonville, Florida.

2.     Aon is a New York corporation with its principal place of business located in Chicago, Illinois.

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between Acosta and Aon, and the aggregate amount in controversy exceeds $75,000, exclusive of interest, attorneys' fees, and costs.

4.     This Court has personal jurisdiction over Aon because Aon is organized under the laws of the State of New York.

5.     All conditions precedent to the maintenance of the causes of action alleged herein have been complied with, have occurred either in fact or by operation of law, or have been waived.

## GENERAL ALLEGATIONS

6.      Since 2013, Aon has served as Acosta's insurance broker and risk advisor, which included serving as Acosta's exclusive broker of record for all of Acosta's liability insurance policies.

7.      In addition to providing advice on the procurement and renewal of insurance policies, Aon also undertook to perform claim management and reporting services for Acosta.

8.      In some instances, Aon charged Acosta additional fees to provide these claims management and notice services.

9.      By way of example, Aon specifically agreed to handle the reporting of claims to the applicable insurers under Acosta's Employers Practices Liability ("EPL") insurance policies.

10.      Acosta paid Aon's fees for claims management and reporting services when charged.

11.      Throughout the course of the parties' relationship, Acosta would notify Aon of the EPL claims against it, typically by quarterly bordereau report, and Aon assumed the duty to notify Acosta's applicable insurance carriers.

12.      On or about December 4, 2018, Aon presented a proposed engagement letter to Acosta's shareholder, Anna Holdings, Inc., pursuant to which Aon proposed to provide insurance brokerage and claims advocacy services (the "Proposed Engagement Letter").

13.      Anna Holdings is a holding company shareholder that did not actually operate any of the Acosta business.

14.      Neither the parties to this suit nor Anna Holdings executed the Proposed Engagement Letter, a duplicate of which is attached as Exhibit "A".

## THE CALIFORNIA LAWSUIT

15.     On March 10, 2020, Ana Padilla ("Ms. Padilla") filed a lawsuit against Acosta in the Superior Court of California for the County of Los Angeles, Case Number 20STCV0977 (the "California Lawsuit") asserting various employment discrimination claims.

16.     Acosta provided Aon with timely notice of the California Lawsuit through its routine bordereau report on June 1, 2020.

17.     In response to Acosta's notice of the California Lawsuit, Aon should have put National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") on notice of the claim as it was Acosta's EPL insurer for the claims within the California Lawsuit.

18.     Aon failed to put anyone on notice of the California Lawsuit in response to Acosta's June 1, 2020 notice of the California Lawsuit.

19.     On December 16, 2020, Acosta sent Aon a follow-up notice regarding the California Lawsuit in which it informed Aon that it was likely that Acosta would soon exceed its self-insured retention, *i.e.*, Acosta's EPL insurer would need to begin reimbursing Acosta for the defense expenses of the California Lawsuit (attorneys' fees and costs) and the insurer would possibly be called upon to indemnify Acosta for any settlement or judgment arising out of the California Lawsuit. As this was a significant development that would likely require the insurer to pay money on the claim, Acosta asked Aon make sure that it notified Acosta's EPL insurer of this new information.

20.     Aon failed to provide anyone notice of the California Lawsuit or these developments in response to Acosta's December 16, 2020 request.

21.     At no time did Aon ever tell Acosta that it would not provide the requested notice of the California Lawsuit to Acosta's appropriate liability insurer.

22.    Acosta did not learn of Aon's failure to correctly notify its EPL insurer until September 2022.

23.    Between June 2020 and September 2022, Acosta, through its counsel, continued to defend the California Lawsuit, engage in settlement negotiations, and prepare for trial without knowing that its applicable liability insurer had no notice of the California Lawsuit.

24.    On September 15, 2022, approximately two and a half years after Padilla filed the California Lawsuit and less than two months prior to the scheduled jury trial commencement, Aon finally notified the correct insurance carrier, National Union (through its administrator AIG), of the California Lawsuit.

25.    In response to the belated notice of the California Lawsuit, in or about October 2022, National Union issued a coverage letter to Acosta reserving its right to deny coverage for the California Lawsuit based on the "fail[ure] to report the Lawsuit in compliance with the Policy's Notice/Reporting Provisions," and further disclaiming any liability for Acosta's defense costs incurred to date or credit towards Acosta's prior satisfaction of the $300,000 retention.

26.    At about that same time, Padilla made a time-limited demand of $10,000,000 (policy limits of Acosta's EPL policy with National Union) to settle Ms. Padilla's claims in the California Lawsuit. Padilla's demand indicated it was only open for acceptance through October 31, 2022.

27.    Acosta promptly reached out to Aon for claims support help to try to get National Union to settle the California Lawsuit despite National Union's threat to disclaim any indemnity obligation for the California Lawsuit due to lack of notice.

28.    Ultimately, in October 2022, Acosta and Aon had a lengthy conference call to discuss the coverage and settlement issues.

29.     During that October, 2022 call, Aon and its employees expressly refused to provide Acosta with any information regarding their purported efforts to negotiate a resolution of the coverage dispute with National Union.

30.     Aon and its employees further expressly refused to tell Acosta when, if at all, Aon would be able to provide any update on Aon's purported settlement efforts with National Union.

31.     The only substantive statement Aon made during the October 2022 teleconference was to repeatedly state that Acosta should do what was in Acosta's best interest as if Acosta were uninsured for the California Lawsuit.

### SETTLEMENT OF THE CALIFORNIA LAWSUIT

32.     As a result of Aon's admonition that Acosta was on its own, Acosta began to negotiate with both Ms. Padilla's counsel and directly with National Union in an attempt to negotiate a global settlement of both the California Lawsuit and Acosta's coverage dispute with National Union.

33.     Given National Union's defense to coverage arising out of Aon's untimely notice of the Padilla claim, National Union refused to contribute more than 50% towards any settlement with Ms. Padilla.

34.     National Union further conditioned its contribution to any settlement of the California Lawsuit upon Acosta satisfying the $300,000 retention a second time with defense costs Acosta incurred after Aon's September 15, 2022 late notice.

35.     On October 31, 2022, with the express consent of National Union, and subject to National Union's refusal to contribute more than 50% of the settlement (net of a second retention), Acosta and Ms. Padilla agreed to settle in the aggregate amount of $9,700,000.

36.     Acosta and National Union separately reached a negotiated resolution of the coverage dispute in which National Union would contribute $4,765,000 towards the aggregate settlement amount.

37.     Acosta, in turn, contributed $4,935,000 towards settlement of the California Lawsuit.

38.     Acosta has fully funded the $9,700,000 settlement of the California Lawsuit of which National Union has paid Acosta for National Union's negotiated share.

39.     Absent Aon's undertaking to report the California Lawsuit and failure to timely do so, Acosta would have been able to avail itself of the full $10,000,000 limits of the National Union policy in settling the California Lawsuit.

40.     In short, but for Aon's failure to provide timely notice to National Union, Acosta would not have had to pay $4,935,000 towards settlement of the California Lawsuit.

## COUNT I – NEGLIGENCE

41.     Acosta re-alleges and incorporates the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

42.     At all times material, Aon was performing services as Acosta's insurance broker and assumed the duty to perform such services to include providing appropriate notice to Acosta's employer's liability insurer for claims such as those arising from the California Lawsuit.

43.     Aon knew that it was performing such professional services for Acosta's benefit and knew that Acosta was relying on Aon to carry out such duties.

44.     Aon undertook and owed a duty to perform its claims reporting services free of negligence and consistent with the minimum standards of care for similarly situated commercial insurance professionals.

45.     Aon breached its duty of care by acting negligently in the performance of its duty by failing to timely notify Acosta's insurance carrier of the California Lawsuit despite multiple requests from Acosta.

46.     Aon further refused to update or provide claims guidance to Acosta regarding the status of Aon's efforts to negotiate resolution of the coverage dispute with National Union despite the looming trial and time limited demands from Ms. Padilla's counsel, which exposed Acosta to a significant excess uninsured risk even in the absence of the coverage issues with National Union.

47.     Aon's breaches of its professional duties directly and proximately caused damages to Acosta, including, without limitation, the lack of full coverage for the California Lawsuit from Aon's insurance carrier, National Union.

WHEREFORE, Acosta demands judgment for its damages in an amount to be determined at trial together with interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT II – BREACH OF FIDUCIARY DUTY

48.     Acosta re-alleges and incorporates the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

49.     At all times material, Aon owed a fiduciary duty to Acosta as Acosta's insurance broker by virtue of the special trust Acosta placed in Aon to provide it advice and act on its behalf as an intermediary with its insurers.

50.     Through Aon's actions in the course of the parties' relationship, a special relationship developed between Acosta and Aon, in which Acosta put its confidence in Aon to properly notify insurance carriers of EPL claims pending against Acosta and Aon accepted this trust and undertook to perform these duties.

51.     At all times material hereto, Aon knew that Acosta relied on it to perform these duties.

52.     Aon further charged Acosta extra fees beyond its normal brokerage commissions to provide certain claims reporting services.

53.     Aon breached its fiduciary duty to Acosta by, *inter alia*, failing to notify Acosta's proper insurance carrier of the California Lawsuit.

54.     Aon further breached its fiduciary obligations by refusing to update or provide claims guidance to Acosta regarding the status of Aon's efforts to negotiate resolution of the coverage dispute with National Union despite the looming trial and time limited demands from Ms. Padilla's counsel which were exposing Acosta to a significant excess uninsured risk even in the absence of the coverage issues with National Union.

55.     Aon's breaches of its fiduciary duties directly and proximately caused damages to Acosta, including, without limitation, the lack of full coverage for the California Lawsuit from Aon's insurance carrier, National Union.

WHEREFORE, Acosta demands judgment for its damages together with interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT III – BREACH OF CONTRACT

56.     Acosta re-alleges and incorporates the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

57.     The Proposed Engagement Letter was neither executed nor binding upon the appropriate parties.

58.     In fact, Aon itself ignored the Proposed Engagement Letter and unilaterally changed its servicing of Acosta's account from a fee-based structure to a commission-based

structure during a time that would have been in the midst of the effective dates of the Proposed Engagement Letter.

59.     Accordingly, the parties did not proceed as though the Proposed Engagement Letter constituted a final and binding contract between them.

60.     Nonetheless, if there was a binding contract between the parties, Acosta alternatively seeks relief for breach of that contract.

61.     Aon agreed under the Proposed Engagement Letter to provide various services to Acosta, including, without limitation, providing claims notice to Acosta's insurance carriers, in exchange for compensation.

62.     Specifically, the Proposed Engagement Letter provided in material part:

> Client shall provide [Aon] with all information relevant to circumstances, occurrences, claims, suits, demands and losses… so that [Aon] may transmit such information to insurer(s) and/or properly assist Client in any negotiations with insurer(s) and adjusters.

*See* Ex. A at p. 10.

63.     To the extent it is an agreement, Acosta performed all of its obligations under the Proposed Engagement Letter.

64.     Aon breached the Proposed Letter Agreement by its failing to properly provide required services including, without limitation, its failure to properly notify Acosta's insurance carriers of the claims against Acosta in the California Lawsuit and its refusal to provide Acosta with the contracted for claims support services.

65.     As a result of Aon's breaches, Acosta has been damaged, which includes, but is not limited to, its damages arising from the lack of full coverage for the California Lawsuit from National Union to which Acosta would have been entitled absent Aon's failure to provide notice

of the California Lawsuit to National Union and the requirement that Acosta twice satisfy its $300,000 retention under its National Union policy resulting in Acosta incurring $4,935,000 that would not have occurred but for Aon's breaches.

### REQUEST FOR RELIEF

WHEREFORE, Acosta demands judgment for its damages together with interest, costs, and such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Acosta hereby demands trial by jury for all issues so triable.

Dated: New York, New York
October 26, 2023

Respectfully submitted,

**SMITH, GAMBRELL & RUSSELL, LLP**

By: /s/ John G. McCarthy
John G. McCarthy
Morgan V. Manley
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Tel.: (212) 907-9700
Fax: (212) 907-9800
jmccarthy@sgrlaw.com
mmanley@sgrlaw.com

-and-

Alan S. Wachs (*pro hac vice* motion forthcoming)
50 N. Laura Street, Suite 2600
Jacksonville, Florida 32202
Tel.: (904) 598-6110
Fax: (904) 598-6210
awachs@sgrlaw.com

*Attorneys for Plaintiff Acosta Inc.*